**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:

A.D. MAC CONSULTING CORP.

     Debtor                       Chapter 7
                                  Case No. 05-50136
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**
**OBJECTIONS TO NOTICE OF PRIVATE SALE**
Document Number 17

**APPEARANCES:**

Barry W. Frost, Esquire
TEICH GROH
691 State Highway 33
Trenton, New Jersey 08619-4492
**Attorney for Trustee**

Timothy P. Neumann, Esquire
BROEGE, NEUMANN, FISCHER& SHAVER, LLC
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
**Attorney for Debtor**

Edward J. Diamond, Esquire
CARLUCCIO, LEONE, DIMON, DOYLE & SACKS, LLC
9 Robbins Street
Toms River, New Jersey 08753
**Attorney for Arthur Macrae, Jr., Arthur D. Macrae, Sr., and**
**A.D. Mac Consulting Corp., Inc.**

Joan R. Sheak, Esquire
Robert M. Conway, Esquire
DUANE MORRIS
968 Postal Road - Suite 110
PO Box 90400
Allentown, Pennsylvania 18109-0400
**Attorneys for Tekmark Global Solutions, LLC**

On July 31, 2008, the United States District Court for the District of New Jersey issued an opinion remanding this matter to the bankruptcy court "for a determination as to the 'good faith' of the purchaser." The Court finds that it can determine the good faith of the purchaser without the need for a further hearing. Accordingly, the Court issues the following findings of fact and conclusions of law.

## Background

This matter arose from a Notice of Private Sale that was filed by the Chapter 7 Trustee of the bankruptcy estate of A.D. Mac Consulting Corp. ("A.D. Mac" or "Debtor") The proposed purchaser was Tekmark Global Solutions, LLC ("Tekmark") and the proposed purchase price was $10,000. The Notice of Private Sale described the asset to be sold as "all of A.D. Mac's right, title and interest in all claims and causes of action set forth in an action in the Superior Court Law Division, Ocean County bearing Docket No. L-3822-06 and United States District Court, District of New Jersey bearing Civil Action No. 07-CV-00398 and all claims whether known or unknown which have been asserted in the above actions and all claims belonging to A.D. Mac Consulting Corp. whether known or unknown against any individual or entity, which the Bankruptcy Trustee now has or may acquire in the future ...." The Notice provided that if timely objections to the sale were filed then a hearing on the objections would be held on January 28, 2008. The Debtor, later joined by Arthur D. Macrae, Sr., filed an objection to the sale claiming that there was a higher and better offer. The alleged higher and better offer was from Arthur D. Macrae, Sr. and provided for a payment $10,500 plus 10% of the proceeds realized from the estimated $15 million cause of action the Debtor brought against Tekmark.

The bankruptcy court held a hearing on the proposed sale on January 28, 2008. Barry Frost, Esq. on behalf of the Chapter 7 Trustee; Timothy Neumann, Esq. on behalf of the Debtor; Edward Dimon, Esq. on behalf of Arthur MacRae, Sr.; and Joan Sheak, Esq. and Robert Conway, Esq. on behalf of Tekmark all appeared at the hearing. Because of the alleged higher and better offer, the Trustee conducted an in-court auction. The bidding began with Mr. Macrae's bid of $10,500 plus 10% of the proceeds of the litigation. After very spirited bidding, the auction ended with Tekmark's bid at $50,500 cash and Mr. Macrae's bid at $50,000 plus 20% of the previously described litigation proceeds. At that point, the Court took argument on the issue of which of the two was the higher and better offer. At the conclusion of the argument, the parties requested permission to submit briefs on the issue. The Court set a briefing schedule and reserved decision. In an opinion dated March 4, 2008, the Bankruptcy Court found that the Tekmark bid was the highest and best offer, and approved the sale by order dated March 13, 2008.

**Discussion**

The District Court concluded that the Bankruptcy Court was required to make an explicit finding that Tekmark was a good faith purchaser. That conclusion was based on the District Court's reading of In re Abbotts Dairies of Pennsylvania, Inc. v. Pennbrook Foods Co., Inc., 788 F.2d 143 (3d Cir. 1986). The Abbotts case is distinguishable from this case for several reasons.

First, the sale in Abbotts debtor was proposed by a Debtor-In- Possession in a Chapter 11 case. The sale presented here was proposed by a Chapter 7 Trustee. In a Chapter 11 case, the sale of substantial assets outside the context of a Chapter 11 plan is the exception, and the lack of substantive and procedural protections skirted by a sale outside the confirmation of a Chapter 11

4

plan figured prominently in the analysis performed by the Third Circuit. Most of those potential abuses do not pertain in a Chapter 7 case because the very purpose of Chapter 7 is liquidation of all the assets by a Trustee. As a result, the motivation to advance a sale prior to confirmation in a Chapter 11 may be open to question, but it is not in a Chapter 7. *See*, 11 U.S.C. § 704(a)(1) (one of the duties of a Chapter 7 trustee is to "collect and reduce to money the property of the estate").

The statutory differences between Chapter 7 and Chapter 11 also account for the different procedures that have been established for bankruptcy sales. As was the case in Abbotts, approval of a sale in a Chapter 11 case must be initiated by motion under § 363(b), if it is outside the "ordinary course of business" for that debtor. By contrast, in a Chapter 7 case a trustee initiates approval of a sale by filing a Notice of Private Sale, because the sale is statutorily mandated by § 704. If no objections are timely filed to a Notice of Private Sale, then the sale is approved without a hearing or any express findings being made by the bankruptcy judge. *See*, In re Gulf States Steel, Inc. of Alabama, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002)("In enacting the Bankruptcy Code, Congress expressed its specific intent that judges of the United States Bankruptcy Court should not participate in the administration of bankruptcy estates ... a Court should not step in and assume a role and responsibility properly placed in the hands of the trustee."). This Court assumes that the Third Circuit was implicitly recognizing the distinctions between Chapter 7 and Chapter 11 when it held that "when a bankruptcy court authorizes a sale of assets **pursuant to section 363(b)(1)**, it is required to make a finding with respect to the 'good faith' of the purchaser." Abbotts at 149 (emphasis added).

More importantly, <u>Abbotts</u> is distinguishable from the case presented here because the record in that case was replete with allegations of bad faith[1]. In this case, despite the opportunity to file written objections before the sale, extensive oral argument at the sale, and briefs submitted after the sale, the specter of bad faith was never raised by the parties. In this case, the record is clear that Tekmark was motivated to bid on the asset by a desire to put an end to the litigation against it. *See*, *Tr. of 1/28/08 hearing* at 23 ("we wish to buy these claims simply because of the cases' nuisance value. We'd like to put an end to it right here and now.") Such motivation, far from setting up a situation where the buyer might collude with the Trustee, instead places the Trustee in a strong bargaining position to obtain the highest possible price for the asset[2].

The only allegations that any party has acted in bad faith are the allegations contained in the underlying litigation, which is the asset for sale. In the underlying litigation, the complaints contain allegations of breach of fiduciary duty, fraud, and breach of the duty of good faith and fair dealing. Those allegations, however, all relate to pre-petition conduct and are irrelevant to the "good faith" analysis before this Court. As <u>Abbotts</u> makes clear, the focus of the "good faith" analysis

---

[1]For example:
"Fairmont filed a number of written objections to the proposed sale that were relevant to the issue of ADC's "good faith". <u>Abbotts</u> at 148

"The record from that hearing, moreover, indicates that counsel for a prospective bidder and three unsecured creditors filed a number of written objections going to ADC's "good faith." They included, for example, the claim that Interim Agreement so greatly diminished Abbotts' value as to 'create a situation where all competitive bidding for [Abbotts'] business would be eliminated, leaving [ADC] to purchase [Abbotts] at an inadequate price, to the detriment of all interested parties.'" <u>Abbotts</u> at 148.

"[T]he situation was ripe for collusion and interested dealing between ADC and Abbotts." <u>Abbotts</u> at 149.

[2]Again, this highlights the difference between Chapter 7 and Chapter 11 cases. In a Chapter 11 case, the assets of the bankruptcy estate, except in exceptional situations, remain in the control of the debtor who is then known as the debtor-in-possession ("DIP"). The opportunity for collusion between a DIP and a buyer is much greater than with a Chapter 7 trustee, who is a disinterested third party.

6

under § 363(b) is on a party's actions in relationship to the bankruptcy sale itself, not on any pre-petition actions. "The requirement that a purchaser act in good faith ... speaks to the integrity of his conduct **in the course of the sale proceedings**. Typically, the misconduct that would destroy a purchaser's **good faith status at a judicial sale** involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Abbotts, 788 F.2d at 147 (emphasis added) (quoting In re Rock Indus, Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)). Since there are no allegations that there was any misconduct by parties related to the in-court auction on January 28, 2008, an explicit finding of good faith is not as relevant as it was in Abbotts. An allegation that it would be "unfair" to allow Tekmark to buy its way out of the state court litigation addresses neither the standard for approval of a settlement nor, significantly, the integrity of the bidding process.

Nonetheless, even if Abbotts could be read to require an express finding of good faith in every Chapter 7 sale, the record in this case is sufficient for the Court to make that finding. The Third Circuit has noted that: "[g]enerally speaking, an auction may be sufficient to establish that one has paid 'value' for the assets of a bankrupt." Abbotts at 149. The only time an auction is not evidence of value is when outside factors interfere with the bona fides of the auction. As previously noted, there have been no allegations that anything occurred that would chill the bidding in this case. The conclusion that the bidding was not chilled is borne out by the fact that there was extensive bidding at the in-court auction. Ultimately, the sale price was driven up from the initial bid of $10,000 to $50,500. The dearth of any suggestion of bad faith in the form of compromise of the

integrity of the bidding process, coupled with the spirited bidding at the auction, allows the Court to conclude that Tekmark was a good faith purchaser.

## Conclusion

The Court finds that Tekmark was a "good faith" purchaser at the in-court auction on January 28, 2008. The Court's finding that Tekmark had the highest and best offer stands. Counsel for the Trustee should submit a form of order.

> */s/ Kathryn C. Ferguson*
> KATHRYN C. FERGUSON
> US Bankruptcy Judge

Dated: September 5, 2008